UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
 12-CR-214S

ROBERT QUINTANA,

              Defendant.

1. The May 15, 2015 Superseding Indictment in this case accuses Defendant Robert Quintana of 46 counts of wire fraud in violation of 18 U.S.C. § 1343. This Court referred the matter to the Honorable Hugh B. Scott, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) to oversee all pre-trial matters that a magistrate judge may hear and determine, as well as to hear and report on all dispositive issues. As part of his pre-trial motions, Quintana moved for suppression of statements made on May 9, 2012, suppression of evidence, and dismissal of the indictments. (Docket No. 94.)

2. In an October 23, 2017 Report and Recommendation, Magistrate Judge Scott recommended granting Quintana's motion in part and denying it in part. (Docket No. 174) He recommended denying Quintana's motion to suppress based in part on evidence from a suppression hearing held over five days between October 2016 and June 2017, at which Quintana and eight law enforcement witnesses testified as to the events of May 9, 2012, the date on which Quintana was questioned and arrested at his home. (See Docket Nos. 134, 156, 158, 164, 165.). In making the recommendation against suppression, Judge Scott found that the timing of the Miranda warning given to Quintana—a point of dispute between the parties—was not material because the

1

questioning that took place on May 9, 2012 was not an interrogation. (Id. at 29.) He further found that Quintana's statements were made voluntarily because, *inter alia*, Quintana was not incapacitated by a late dosage of his prescription medication that morning. (Id. at 30.)

3. Presently before this Court are Quintana's objections to the Report and Recommendation. (Docket No. 177.) Quintana argues that the questioning at his home on May 9, 2012 was an interrogation and so a determination must be made as to the timing of the Miranda warning. The Government does not dispute Quintana's contention that the questioning was an interrogation, but argues that this Court should accept the Report and Recommendation on alternate grounds. Having considered the arguments and carefully reviewed the submissions, as well as the transcripts from the hearing, this Court finds that the questioning that took place at Quintana's residence on May 9, 2012 was an "interrogation" for purposes of Miranda. Although law enforcement also sought Quintana's cooperation in an investigation of health care fraud that was targeting another subject, the testimony and the FBI's record of the interview demonstrate that law enforcement's questioning falls under the broad definition of an "interrogation." See Jackson v. Conway, 763 F.3d 115, 137 (2d Cir. 2014) ("In the context of Miranda, 'the term "interrogation" . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" (quoting Rhode Island v. Innis, 446 U.S. 291, 309 n. 5, 100 S. Ct. 1682, 1694, 64 L. Ed. 2d 297 (1980)). The issue of when Quintana was read his Miranda rights is therefore material, and requires a credibility assessment.

4. As a general matter, this Court defers to a magistrate judge's credibility findings in a criminal suppression context, see Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (noting that "a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge") (internal citation omitted), and does not make credibility determinations as to disputed facts based on transcripts alone. See Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised."). Because Magistrate Judge Scott had an opportunity to observe the demeanor of all witnesses and listen to all of the testimony and evidence presented over the course of a five-day evidentiary hearing, this Court remands the matter back to him to make a determination regarding the timing of Miranda warning.

5. Quintana further argues that, even if a Miranda warning was administered prior to questioning as the Government alleges, he could not voluntarily waive his rights because he was in withdrawal from his prescription medication and under psychological coercion due to the presence of Internal Affairs Division officers. Judge Scott found that Quintana's waiver of his rights was voluntary despite his use of pain medication and feelings of withdrawal during the questioning due, in part, to the fact that Quintana also took medication during his testimony on June 1, 2017 and that his demeanor "before and after he took his regular dosage of pain medication had not changed." (Docket No. 174 at 30.) When a defendant moves to suppress a statement that he claims was obtained in violation of Miranda, the government has the burden of proving by a preponderance of

the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the defendant's Miranda rights. See United States v. Gaines, 295 F.3d 293, 297 (2d Cir. 2002). A determination as to voluntariness looks to the totality of the circumstances surrounding the statement. Id. at 297-98.

6. Quintana testified that, on the morning he was questioned and arrested, he was over an hour late in taking his scheduled medications, which caused him to feel "dizzy" and "woozy," which he described as the "beginnings of withdrawal." (Docket No. 165 at 29.) Agent Provost recorded Quintana as taking oxycodone, Lyrica, and suboxone during the interview. (Docket No. 182-1 at 2.) However, on the date of his testimony, it does not appear that Quintana took his medications late, perhaps only a few minutes after the appointed time. (Docket No. 165 at 53-54.) Nor does it appear that Quintana took the same medications. He testified that, on the morning of the hearing, he had taken suboxone, ibuprofen, and valium—but not oxycodone or Lyrica—and there is no testimony as to what medications he took during his testimony. (See id. at 53.) Because the medications and the circumstances differ, this Court finds that a determination of voluntariness cannot rest on Quintana's demeanor during his testimony. Accordingly, it requests that, if appropriate, the Magistrate Judge reexamine his voluntariness determination on remand.

7. Judge Scott also recommended dismissal of the mail fraud claim in the original Indictment, due to the age of the charges and the parties' agreement that a mail fraud charge would not be pursued, and recommended denying Quintana's motion to dismiss the Superseding Indictment, finding that the charges do not violate the constitution and that the charging document is not facially insufficient. Having reviewed

these recommendations *de novo* after considering Quintana's Objections and the parties' submissions, see 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); Local Rule 72.3(a), this Court concurs with the Magistrate Judge's findings and his recommendations to grant dismissal of the original Indictment and deny dismissal of the Superseding Indictment. The motion to suppress is remanded for further findings consistent with this order, to be completed no later than March 6, 2018.

IT HEREBY IS ORDERED, that this Court ACCEPTS Judge Scott's October 23, 2017 Report and Recommendation (Docket No. 174) in part;

FURTHER, that Defendant's objections to this Report and Recommendation (Docket No. 177) are GRANTED in part and DENIED in part;

FURTHER, that Defendant's motion to dismiss the original Indictment (Docket No. 94) is GRANTED;

FURTHER, that Defendant's motion to dismiss the Superseding Indictment (Docket No. 94) is DENIED;

FURTHER, that Defendant's motion for suppression (Docket No. 94) is REMANDED to the Magistrate Judge for further findings, to be completed no later than March 6, 2018;

FURTHER, that the Status Conference scheduled before this Court on February 7, 2018 is CANCELLED.

SO ORDERED.

Dated: February 6, 2018
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge